1   Bruce G. Chapman (State Bar No. 164,258)
    bchapman@sheppardmullin.com
2   Scott R. Miller (State Bar No. 112,656)
    smiller@sheppardmullin.com
3   Manuel C. Nelson (State Bar No. 229,590)
    mnelson@sheppardmullin.com
4   SHEPPARD MULLIN RICHTER & HAMPTON LLP
    333 South Hope Street, 43rd Floor
5   Los Angeles, California 90071-1422
    Telephone: (213) 620-1780
6   Facsimile:  (213) 620-1398

7   Lee Hsu (State Bar No. 175,272)
    lhsu@sheppardmullin.com
8   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
    12275 El Camino Real, Suite 200
9   San Diego, California 92130
    Telephone: (858) 720-8900
10  Facsimile: (858) 509-3691

11  Attorneys for Plaintiff and Counterdefendant,
    ENOVSYS LLC

12

13              IN THE UNITED STATES DISTRICT COURT

14          FOR THE CENTRAL DISTRICT OF CALIFORNIA

15

16  ENOVSYS LLC,                      Case No. 2:11-CV-05210 DDP (AGRx)

17              Plaintiff,            **OPENING CLAIM
                                      CONSTRUCTION BRIEF OF
18       v.                           PLAINTIFF ENOVSYS LLC**

19  AT&T MOBILITY LLC, and AT&T       Date:    January 14, 2013
    MOBILITY II LLC, collectively doing Time:    TBD
20  business as AT&T Mobility,        Place:   Hon. Dean D. Pregerson,
                                               Courtroom 3
21              Defendants.

22  ─────────────────────────────
    AT&T MOBILITY LLC, and AT&T
23  MOBILITY II LLC,

24              Counterclaimants,

25       v.

26  ENOVSYS LLC,

27              Counterdefendant.

28

SMRH:407199613.10                     ENOVSYS LLC'S CLAIM CONSTRUCTION
                                      BRIEF

# **Table of Contents**

Page(s)

I.     INTRODUCTION ...................................................................................... 1

II.    THE PRIOR NEXTEL LITIGATION ........................................................ 1

III.   CONSTRUCTION OF IDENTIFIED TERMS ........................................ 2

       A.    Group 1 Terms: mobile remote; mobile remote unit; mobile
             remote receiving unit ......................................................................... 3

       B.    Group 2 Term: to establish ................................................................ 4

       C.    Group 3 Term:  at the network ........................................................... 5

       D.    Group 4 Terms:  pre-authorized; preauthorized; preauthorizing .......... 6

       E.    Group 5 Term:  continuously tracked ................................................. 8

       F.    Group 6 Terms:  network resource(s); communication resources ....... 9

       G.    Group 7 Terms:  location information disclosure
             instruction; location disclosure instruction;
             location disclosure information ........................................................ 11

       H.    Group 8 Terms:  profile; location access field .................................. 12

       I.    Group 9 Terms:  a communication system comprising: …
             within the system ............................................................................. 14

       J.    Group 10 Terms:  means for detecting an absence of
             communication with the remote receiving unit ................................. 14

       K.    Group 11 Terms:  source of the request; source of request ............... 17

       L.    Group 12 Terms:  Claim 12 in its entirety ........................................ 17

       M.    Group 13 Terms:  Claim 19 in its entirety ........................................ 18

       N.    Group 14 Terms: (from claim 25) "the mobile remote
             unit able to deny … during a period time [sic] when access
             to mobile remote unit location information has been granted
             to another preauthorized communication resource at the
             network" and (from claim 28) "the system able to use
             the location access field … while allowing another
             preauthorized resource identified in a second profile
             to access the location information of the first
             communication resource during the time that access
             is being denied …" ......................................................................... 19

       O.    Group 15 Term:  authorized resource .............................................. 21

       P.    Group 16 Terms:  requesting that the location information
             of said mobile remote unit be established ......................................... 21

ENOVSYS LLC'S  CLAIM CONSTRUCTION
BRIEF

Q.   Group 17 Term:  time stamp ................................................................. 22

IV.   CONCLUSION ............................................................................. 23

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*AllVoice Computing PLC v. Nuance Commc'ns, Inc.*
  504 F.3d 1236 (Fed. Cir. 2007) ............................................................14, 15, 16

*CardioFocus, Inc. v. Cardiogenesis Corp.*
  827 F. Supp. 2d 36 (D. Mass. 2011).....................................................10, 20, 21

*Comaper Corp. v. Antec, Inc.*
  596 F.3d 1343 (Fed. Cir. 2010) ..............................................................5, 10, 12

*Cybor Corp. v. FAS Techs.*
  138 F.3d 1448 (Fed. Cir. 1998) ...........................................................................2

*Enovsys LLC v. Nextel Commc'ns, Inc., et al.*
  Case No. 2:06-CV-05306 RSWL (SHx) (C.D. Cal.), D.I. 261 ..................*passim*

*Enovsys LLC v. Nextel Commc'ns, Inc.*
  614 F.3d 1333 (Fed. Cir. 2010) ...........................................................................2

*Karlin Tech. Inc. v. Surgical Dynamics, Inc.*
  177 F.3d 968 (Fed. Cir. 1999) .............................................................................3

*Markman v. Westview Instruments, Inc.*
  517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) .....................................2

*NTP, Inc. v. Research in Motion, Ltd.*
  418 F.3d 1282 (Fed. Cir. 2005) ...............................................................9, 20, 21

*Phillips v. AWH Corp.*
  415 F.3d 1303 (Fed. Cir. 2005) (en banc) .............................................5, 6, 10, 19

*Verizon Calif. Inc. v. Katz Tech. Licensing*
  326 F. Supp. 2d 1060 (C.D. Cal. 2003)................................................................2

*WMS Gaming, Inc. v. Int'l Game Tech.*
  184 F.3d 1339 (Fed. Cir. 1999) ...............................................................14, 16

<u>Statutes</u>

35 U.S.C. § 112, ¶ 6.............................................................................................14

-iii-

1  Pursuant to the Court's Scheduling Order (D.I. 34), Plaintiff Enovsys LLC

2  ("Enovsys") hereby submits its opening brief in support of its proposed

3  constructions of claim terms identified by the parties as needing construction.

4  ## I.   BACKGROUND

5  Enovsys has asserted two related patents against the defendants (collectively

6  "AT&T"), U.S. Patent Nos. 6,560,461 ("the '461 patent") and 7,925,273 ("the '273

7  patent"). [1]  The patents are directed to communications systems and methods that

8  use location based services ("LBS").  LBS make use of information about the

9  location of a portable device such as a cell phone to provide services related to the

10  location information, such as tracking or navigation, or the identification and

11  locations of nearby stores, weather forecasts for the area, etc.  The asserted claims

12  of the '461 patent relate to selective disclosure of location information, *e.g.*, by

13  permitting a requestor to obtain or share the location of a mobile device (or the user

14  of the device), while denying another requestor access to the location information.

15  The asserted claim of the '273 patent relates to a method of using time information

16  to determine whether to establish or update a device's location information in a

17  communication system.

18  ## II.   THE PRIOR NEXTEL LITIGATION

19  The '461 patent, the primary patent involved in this case, was previously

20  litigated in *Enovsys LLC v. Nextel Commc'ns, Inc., et al.*, Case No. 2:06-CV-05306

21  RSWL (SHx) (C.D. Cal.).  In the *Nextel* case, Judge Lew construed the claims of

22  the '461 patent,[2] a jury verdict of infringement and no invalidity was entered,[3] and

23

24  _____

[1] Copies of the '461 and '273 patents are provided as Exhibits 1 and 2,
25  respectively, to the Declaration of Manuel Nelson ("Nelson Decl.").

26  [2] *Enovsys LLC v. Nextel Commc'ns, Inc., et al.*, No. 2:06-CV-05306 RSWL
(SHx), D.I. 261 (C. D. Cal. Feb. 26, 2008), Nelson Decl. Ex. 3.

27  [3] *Enovsys LLC v. Nextel Commc'ns, Inc., et al.*, No. 2:06-CV-05306 RSWL
(SHx), D.I. 376 (C. D. Cal. May 16, 2008), Nelson Decl. Ex. 4.

28

1   the infringement judgment was affirmed on appeal.[4]

2        Not only were Judge Lew's claim construction rulings in the *Nextel* case

3 correct, as discussed below, but those ruling should be treated as *stare decisis*.

4          [W]hereas issue preclusion could not be asserted against

5          new and independent infringement defendants even

6          within a given jurisdiction, ***treating interpretive issues as***

7          ***purely legal will promote*** (though it will not guarantee)

8          ***intrajurisdictional certainty through the application of***

9          ***stare decisis*** on those questions not yet subject to

10          interjurisdictional uniformity under the authority of the

11          single appeals court.

12 *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391, 116 S.Ct. 1384, 1396,

13 134 L.Ed.2d 577 (1996) (emphasis added).  Claim construction is purely a matter of

14 law, *Cybor Corp. v. FAS Techs.*, 138 F.3d 1448, 1454-55 (Fed. Cir. 1998) (en

15 banc), and thus entitled to *stare decisis*.  Even in instances when intrajurisdictional

16 *stare decisis* does not apply, courts consider prior claim construction decisions from

17 a different jurisdiction to be persuasive and highly relevant.  *See Verizon Calif. Inc.*

18 *v. Katz Tech. Licensing*, 326 F. Supp. 2d 1060, 1069 (C.D. Cal. 2003).

19        **III.**    **CONSTRUCTION OF IDENTIFIED TERMS**

20        Envosys has asserted claims 1, 6, 10, 11, 12, 13, 18, 19, 25, 27, and 28 of the

21 '461 patent, and claim 1 of the '273 patent.  Many of the claims share various

22 terms.  As a result, the parties have agreed to group various terms into 17 groups of

23 related terms.  *See* D.I. 50.  Enovsys's briefing follows those groupings.

24

25

26

27

28

---

[4] *Enovsys LLC v. Nextel Commc'ns, Inc.*, 614 F.3d 1333 (Fed. Cir. 2010).

A.    **Group 1 Terms: mobile remote; mobile remote unit; mobile remote receiving unit**

"Mobile remote" and "mobile remote unit" were previously construed to mean "a small, portable device used to send or receive communication transmissions from a remote location." *Enovsys LLC v. Nextel Commc'ns, Inc., et al.*, No. 2:06-CV-05306 RSWL (SHx), D.I. 261 at 8-9 (C. D. Cal. Feb. 26, 2008) ("*Nextel*").  Similarly, "mobile remote receiving unit" was construed to mean "a small, portable device that is used to receive communication transmissions from a remote location." *Id.*

The prior claim construction is correct and should be applied in this case. The '461 patent generally describes mobile remotes as small portable devices: "portable mobile telecommunication devices such as cellular telephones, pagers and other handheld information receiving devices are utilized by a greater cross section of the population since they are relatively inexpensive to acquire."[5]  Likewise, the mobile remote is generally described as communicating from a remote location: "Normally information from a communication source is transmitted to a subscriber in possession of a handheld communication information receiving device at a remote global location."[6]

The prior *Nextel* claim construction ruling also gives effect to the additional word "receiving" recited in "mobile remote *receiving* unit."  Giving meaning to the word "receiving" adheres to a basic claim construction principle that "different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999).

---

[5] '461 patent, 1:16-20.

[6] '461 patent, 1:20-23.

1    The prior claim construction ruling in *Nextel* is fully supported by the '461

2  patent and the principles of claim construction, and should be adopted.  "Mobile

3  remote" and "mobile remote unit" should be construed to mean "a small, portable

4  device used to send or receive communication transmissions from a remote

5  location."  "Mobile remote receiving unit" should be construed to mean "a small,

6  portable device that is used to receive communication transmissions from a remote

7  location."

8    **B.    Group 2 Term:  to establish**

9    The term "to establish" was construed to mean "to bring about; bring into

10 existence."  *Nextel*, No. 2:06-CV-05306 RSWL (SHx), D.I. 261 at 9.  This

11 construction is consistent with the written description of the '461 patent and the

12 ordinary meaning of "establish."

13   Specifically, the '461 patent claims use the term "establish" in its ordinary

14 sense.  For example, claim 1 recites "a mobile remote unit able to communicate

15 with at least a signal transmitting and receiving unit *to establish* mobile remote unit

16 location information at the network...."[7]  As used in the claim, "to establish"

17 connotes to bring into existence.

18   The '461 patent's written description also uses "establish" in this same,

19 ordinary sense:

20     If the CPU [108] *establishes* that the current global position of

21     the remote receiving unit is not within the user's preferred location to

22     receive pages, the user is immediately alerted that they are out of their

23     paging area and no paging messages will be received. … The remote

24     receiving unit will scan for the strongest network communicating

25     channel via transceiver[101]. If such a link *is established*, the remote

26

27   _____

28     [7] '461 patent, 9:53-56 (emphasis added).

receiving unit will automatically update the network with its current global positioning coordinates."[8]

In circumstances such as this, where a claim term is used in its normal everyday sense, it is appropriate to look to dictionaries for the meaning of the term. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1322 (Fed. Cir. 2005) (en banc) ("Dictionaries … are often useful to assist in understanding the commonly understood meaning of words"); *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010) (when specification does not suggest particular meaning, "it is appropriate to consult a general dictionary definition of the word for guidance"). The dictionary meaning of "to establish" is "to bring about"[9] and "to bring into existence."[10]

The term "to establish" should be construed as it was in *Nextel*, according to its common meaning. "[T]o establish" means "to bring about; bring into existence."

## C.    Group 3 Term:  at the network

The term "at the network" was not construed in the *Nextel* case.

The ordinary meaning of "network" connotes an "interconnected group or system."[11]  The more technical meaning is similar: "a collection of resources used to establish and switch communication paths between terminals"[12] or "an arrangement of nodes and interconnecting branches."[13]  In the context of the '461 patent, the network relates to telecommunication devices.[14]  As such, the meaning

---

[8] '461 patent, 8:38-54 (emphasis added).

[9] Nelson Decl. Ex. 8, at 195.

[10] Nelson Decl. Ex. 7, at 182.

[11] Nelson Decl. Exs. 7 (at 186); 8 (at 203).

[12] Nelson Decl. Ex. 9, at 209.

[13] Nelson Decl. Ex. 11, at 226.

[14] '461 patent, 1:12-18.

1    of "network" used in the '461 patent is "a group or collection of interconnected

2    telecommunication devices or resources."

3        The ordinary meaning of "at" is "in."[15]  Putting the ordinary meaning of "at"

4    and "network" together, "at the network" means "in a group or collection of

5    interconnected telecommunication devices or resources."

6        The ordinary meaning of "at the network" is, moreover, fully consistent with

7    the '461 patent's specification.  Figure 1 of the '461 patent, for example, broadly

8    illustrates a preferred embodiment of a "network" comprising satellites 2, base

9    stations 4, control stations 6, mobile remote units 8, and transmitters 10.[16]  The

10   Summary of the Invention also broadly describes the "network" as "a network of

11   signal transmitting and receiving units and remote receiving units."[17]

12       The use of the term "at the network" in the '461 patent fully comports with

13   the ordinary meaning of the terms "at" and "network."  Enovsys's construction thus

14   "most naturally aligns with the patent's description of the invention."  *Phillips*, 415

15   F.3d at 1315-16 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d

16   1243, 1250 (Fed. Cir. 1998).  "At the network" should be construed to mean "in a

17   group or collection of interconnected telecommunication devices or resources".

18       **D.    Group 4 Terms:  pre-authorized; preauthorized; preauthorizing**

19       "[P]re-authorized" and "preauthorized" (and by analogy, "preauthorizing")

20   were previously construed in the *Nextel* case to mean "authorized [or authorizing]

21   to submit a request in advance of determining whether the request will be granted."

22   *Nextel*, No. 2:06-CV-05306 RSWL (SHx), D.I. 261 at 9-10.

23       This prior claim construction corresponds to both the ordinary meaning and

24   the description in the '461 patent.  The prefix "pre-" designates the temporal

25   _____

26   [15] Nelson Decl. Ex. 10, at 213; *see also id.* Exs. 7 (at 180); 8 (at 192).

27   [16] '461 patent, 2:57-67.

28   [17] '461 patent, 1:33-36.

relationship "before in time," "earlier (than)," "prior (to)," etc.[18]  Thus, consistent with the prior claim construction, the ordinary meaning of "pre-authorized" is "authorized in advance."

"Preauthorizing," as used in the '461 patent, is akin to obtaining a security clearance.  Even when a person has a security clearance (*i.e.*, the person is "authorized in advance" to access sensitive information), that alone is not sufficient to be given actual access to all sensitive information.  A person with security clearance must request the sensitive information and have a need to know the information.  For example, in claim 1, there is "a pool of signal transmitting and receiving units from the network some of which are pre-authorized to be able to access the location of the mobile remote unit …."[19]  But even for the "pool of preauthorized signal transmitting and receiving units," "the system is able to accept or deny the provision of mobile remote unit location information …."[20]  Thus, even though a signal transmitting and receiving unit in the pool is preauthorized, that alone is not sufficient to be given access to the sensitive information, *i.e.*, the location information.

The prosecution history of the '461 patent before the U.S. Patent and Trademark Office ("PTO") similarly describes that "a pre-authorized network resource from the pool could be inhibited for a time while other pre-authorized network resources from the same pool will continue to access and obtain the location information of the mobile remote unit from the network."[21]  Thus, a

---

[18] Nelson Decl. Ex. 10, at 217; *see also id.* Exs. 7 (at 187); 8 (at 204).

[19] '461 patent, 9:56-59.

[20] '461 patent, 9:61-64.

[21] Nelson Decl., Ex. 6 at 120 (ENOVSYS.ATT-00000788); *see also id.*, at 122 (ENOVSYS.ATT-00000790) (inhibition information for pre-authorized source of request used to selectively limit access to location information); *id.,* at 123 (ENOVSYS.ATT00000791) (preauthorized requestor has associated therewith mobile remote location disclosure information for the requestor which permits selective blocking of preauthorized requestor).

1  resource may be denied location information even though it is pre-authorized to

2  request it.

3      In light of the '461 patent, the prosecution history and ordinary meaning,

4  "preauthorized" allows a unit or resource to submit a request for location

5  information even though the request for location information ultimately may be

6  denied.  Thus, the terms "pre-authorized," "preauthorized" and "preauthorizing"

7  should be construed to mean "authorized (or authorizing) to submit a request in

8  advance of determining whether the request will be granted."

9      **E.    Group 5 Term:  continuously tracked**

10     "Continuously tracked" was previously construed to mean "kept track of (i.e.

11 observed or known about) without interruption."  *Nextel*, No. 2:06-CV-05306

12 RSWL (SHx), D.I. 261 at 10-11.  The prior construction is completely consistent

13 with the term's ordinary meaning and use in the '461 patent, as well as the

14 prosecution history in the PTO.

15     The '461 patent describes preferred embodiments that keep track of the

16 location of the mobile unit at all times by periodically resolving the position of the

17 mobile remote and updating the network with the location information:

18         … The remote receiving unit [8], will periodically resolve a

19     global position from signals transmitted from satellites and earth based

20     communication means. The resolved global position will be

21     periodically utilized to update the network …. This will enable the

22     paging network to know the exact global location of a remote

23     receiving unit whenever the need arises.[22]

24 By periodically resolving and storing or updating the location of the mobile remote

25 unit, the location of the mobile remote unit is continuously kept track of (*i.e.*

26 observed or known about) without interruption.

27

28     [22] '461 patent, 3:7-15; *see also id.*, 3:43-49; 3:58-4:2; 8:33-54; 8:65-9:4.

1    Claims 1 and 6 of the '461 patent each have "wherein" clauses reciting

2 "continuously tracked." These wherein clauses were added to application claims 1

3 and 3 (which issued as claims 1 and 6) during prosecution.[23] At the time of the

4 amendment, the patentee described the difference between the amended claims and

5 the prior art as follows:

6    The fundamental difference between the invention and the prior

7    art is the way in which the invention limits a preauthorized network

8    resources [sic] from accessing the location of a mobile remote unit.

9    The prior art stops to provide the location of the mobile remote unit to

10    the network and the invention does not. In the invention the location of

11    the mobile is *continuously* provided to the system or *tracked* during the

12    time when a preauthorized network resource is being denied access.[24]

13 This discussion is consistent with the '461 patent's written description and the prior

14 construction in *Nextel* of "continuously tracked."

15    The prior *Nextel* claim construction accurately reflects the meaning of

16 "continuously tracked" as used in the '461 patent. "Continuously tracked" should

17 be construed to mean "kept track of (*i.e.* observed or known about) without

18 interruption."

19    **F.    Group 6 Terms:  network resource(s); communication resources**

20    The terms "network resource(s)" and "communication resources" have not

21 been previously construed. Enovsys's proposed construction, however, is

22 straightforward. "Resource" as used in both terms should be given its ordinary

23 dictionary meaning, *i.e.*, "means of doing something." "Network" should be given

24 the same construction "network" was given above when construing "at the

25 network." *See NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1293 (Fed.

26    [23] Nelson Decl. Ex. 6, at 72, 136, 164-165 (ENOVSYS.ATT-00000642, 820,

27 848-849).

28    [24] Nelson Decl. Ex. 6, at 142 (ENOVSYS.ATT-00000826) (emphasis added).

Cir. 2005) (similar terms should be interpreted similarly); *CardioFocus, Inc. v. Cardiogenesis Corp.*, 827 F. Supp. 2d 36, 40 (D. Mass. 2011) (same).  And "communication" is so clear it needs no construction.

The term "resource" is not given any special definition in the specification of the '461 patent and is found only in the claims.  It is thus appropriate to turn to the dictionary for guidance.  *See Phillips*, 415 F.3d at 1322 ("Dictionaries … are often useful to assist in understanding the commonly understood meaning of words"); *Comaper*, 596 F.3d at 1348 (when specification does not suggest particular meaning, "it is appropriate to consult a general dictionary definition of the word for guidance").  In this regard, the ordinary meaning of "resource" is "a means of doing something; expedient"[25] or "a means of accomplishing something."[26]  Even in a more specialized dictionary for Electrical and Electronics Engineering, "resource" is similarly defined as:

> A means utilized to perform one or more operations, or to accomplish a given task.  In computers, for instance, resources include storage device, processors, and applications.[27]

There is nothing in the '461 patent or its prosecution history that gives "resource(s)" a meaning that is narrower than its ordinary meaning, *i.e.*, "a means of doing something."

Thus, resource(s) should be accorded its ordinary meaning of "means of doing something"; "network" was construed above to mean "a group or collection of interconnected telecommunication devices or resources"; and "communication" does not require further construction.

---

[25] Nelson Decl. Ex. 12, at 232.

[26] Nelson Decl. Ex. 10, at 219.

[27] Nelson Decl. Ex. 13, at 240.

**G.    Group 7 Terms:  location information disclosure instruction; location disclosure instruction; location disclosure information**

Previously, "location information disclosure instruction" was construed to mean "information specifying or instructing whether the location information can or should be disclosed."  *Nextel*, No. 2:06-CV-05306 RSWL (SHx), D.I. 261 at 11. Although not previously construed, the nearly identical terms "location disclosure instruction" and "location disclosure information" all represent minor variations of the previously construed "location information disclosure instruction."  The minor variations all should be construed similarly.

The prior claim construction is fully consistent with the ordinary meaning of these terms and with the '461 patent's written description.  For example, in claim 11, the method "quer[ies] at the network for *location information disclosure instruction* for the mobile remote receiving unit" and then it "us[es] said instruction (v) to allow or block mobile remote receiving unit location information to the pre-authorized source of request."[28]  Thus, even if the source of the request is authorized to request or access location information, there is an additional check which seeks a location information disclosure instruction "for" (*i.e.*, associated with) the mobile remote and applies that instruction to allow or block the location information of the mobile remote unit to the preauthorized source of the request.

The written description of the '461 patent also similarly describes that "[t]he remote unit may either accept or decline to this [sic] request by transmitting specific information [*i.e.*, location disclosure information] back to the paging network which will reveal or block the location to the caller."[29]  Again, even if a resource is authorized to access the location information, the resource may not be given the information.  Instead, the remote unit must provide a location disclosure instruction or information to grant or block the location information to the resource.

---

[28] '461 patent, 11:10-15.

[29] '461 patent, 5:42-45.

-11-

1    "Location information disclosure instruction," "location disclosure

2    instruction" and "location disclosure information" should be construed to mean

3    "information specifying or instructing whether the location information can or

4    should be disclosed," as in the prior *Nextel* case.

5          **H.    Group 8 Terms:  profile; location access field**

6          "Profile" was previously construed to mean "a set or collection of

7    information, attributes, or parameters relating to a particular person, device,

8    application, or subject."  *Nextel*, No. 2:06-CV-05306 RSWL (SHx), D.I. 261 at 11.

9    The related term "location access field" was construed to mean "a field, element or

10   item of data in a profile that indicates, or contains information indicating, whether

11   access to location information can or should be allowed."  *Id.* at 11-12.

12         The prior constructions are fully consistent with the plain meaning of the

13   terms and their use in claim 28 of the '461 patent, where these terms are found.  As

14   recited in claim 28, "a profile is maintained by the system, said profile containing

15   the identity of a preauthorized resource, identity of the first communication

16   resource and a location access field indicating whether said preauthorized resource

17   identified in the profile should be allowed/disallowed to access the location

18   information of the first communication resource identified in said profile."[30]  Thus,

19   the term "profile" plainly includes a collection of information relating to

20   communication resources.

21         The '461 patent explains that, in a preferred embodiment, "pre-selected

22   areas, pager ID, paging protocol and other relevant information of the remote

23   receiving unit are stored in the data library of a paging control station [6] for all

24   pagers utilizing the paging network."[31]  This passage provides an example

25   confirming that a "profile" is a collection of information.  Such a "profile" can store

26   _____

27         [30] '461 patent, 14:10-18.

28         [31] '461 patent, 3:3-6.

"relevant information of the remote receiving units."[32] The '461 patent further explains that, in a preferred embodiment, after receiving a request for location information, "the control station … verifies from its data library if the positioning disclosure feature for that remote receiving unit has not been blocked by the subscriber."[33]  This preferred embodiment describes a profile in the data library that stores location disclosure information, among other things.  The use of "profile" in the '461 patent is consistent with its ordinary meaning.[34]  Thus, the construction of "profile" in the *Nextel* case as "a set or collection of information, attributes, or parameters relating to a particular person, device, application, or subject" is correct.

The meaning of "location access field" is provided directly by claim 28 as "a field in the profile that indicates whether a preauthorized resource identified in the profile should be allowed/disallowed to access location information of a communication resource."  One preferred embodiment of the claimed "location access field" is the location "disclosure feature" stored in a profile as discussed above.[35]  The prosecution history described, among other things, a preferred embodiment that uses stored "inhibition information" to selectively limit access of preauthorized sources of requests.[36] These examples are completely consistent with the Court's prior construction of "location access field."  Additionally, the ordinary meaning of "field" includes "an element of a database record in which one piece of information is stored"[37] which also is consistent with Court's prior construction of "location access field."

---

[32] '461 patent, 3:4-5.

[33] '461 patent, 4:46-51.

[34] Nelson Decl., Ex. 7, at 188 ("4: a set of data … portraying the significant features of something").

[35] '461 patent, 4:46-51.

[36] Nelson Decl., Ex. 6, at 122 (ENOVSYS.ATT-00000790).

[37] Nelson Decl., Ex. 8, at 196; *see also* Exs. 9 (at 208); 11 (at 225).

"Profile" should be construed to mean "a set or collection of information, attributes, or parameters relating to a particular person, device, application, or subject," as construed in *Nextel*. "Location access field" should be construed as "a field, element or item of data in a profile that indicates, or contains information indicating, whether access to location information can or should be allowed," as construed in *Nextel*.

## I.     Group 9 Terms:  a communication system comprising: … within the system

For reasons that it will likely explain at some point, AT&T asserts that "[a] communication system comprising: … preauthorizing some of the communication resources to be able to obtain the location of the mobile remote unit at a given time wherein the location of the mobile is continuously tracked within the system" is indefinite.  D.I. 50 at 5.  However, both parties have offered constructions for the key terms within this phrase – "preauthorizing," "communication resources," "mobile remote unit" and "continuously tracked."  The remaining terms do not appear to need any construction.

## J.     Group 10 Terms:  means for detecting an absence of communication with the remote receiving unit

The parties agree that the term "means for detecting an absence of communication with the remote receiving unit" is a "means-plus-function" limitation governed by 35 U.S.C. § 112, ¶ 6.  To construe a means-plus-function limitation, the Court must, first, identify the recited function and, second, identify the corresponding "means," *i.e.*, the structure described in the specification that performs the recited function.  *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1347 (Fed. Cir. 1999); *AllVoice Computing PLC v. Nuance Commc'ns, Inc.*, 504 F.3d 1236, 1240 (Fed. Cir. 2007).

The parties further agree that the recited function is "detecting an absence of communication with the remote receiving unit," but disagree as to the structure that

1   performs such function.  AT&T suggests that it cannot find a structure described in

2   the '461 patent to perform the recited function, and that therefore claim 10 is

3   indefinite.  Enovsys identifies the structure as a CPU implementing the decision

4   block of the flow chart provided in Figure 4.

5          In this regard, the '461 patent provides a detailed drawing and description of

6   a remote receiving unit.[38]  The '461 patent explains that all of the blocks and

7   functionalities of the mobile remote are controlled by the CPU 108.[39]  As described

8   above in the "continuously tracked" limitation (Group 5), stored location

9   information for the mobile remote unit can be periodically updated.  The '461

10  patent describes how, in certain embodiments, an update may be performed:

11         The remote receiving unit will scan for the strongest network

12         communicating channel via transceiver [101]. If such a link is

13         established, the remote receiving unit will automatically update the

14         network with its current global positioning coordinates. In

15         circumstances where the remote receiving unit does not find a suitable

16         network channel for direct communication, the remote receiving unit

17         will alert the user that no RF communicating channel was found for

18         automatic update of its current global position.[40]

19

20

_____

21   [38] '461 patent, Fig. 2; 6:46-8:24.

22   [39] '461 patent, 6:48-52 (CPU controls connection circuitry); 6:58-62 (CPU
     controls satellite receiving means 103 and terrestrial receiving means 104); 6:62-7:5
23   (CPU controls operation of satellite receiving means 103); 7:10-11 (CPU controls
     satellite unit via 206); 7:13-14 (CPU controls decoder 105); 7:14-35, 43-45
24   (transmission and priority of data from satellite decoder 105 and terrestrial signal
     decoder 106 determined by CPU); 7:45-49 (CPU controls operation of connecting
25   circuitry, and satellite and terrestrial receiving means); 7:49-51 (CPU determines
     when satellite or terrestrial signal is received and processed); 7:52-65 (CPU
26   processes stored data); 7:66-8:10 (CPU controls power usage, and determines
     which signals to block, pass and process); 7:11-24 (CPU alerts user and processes
27   and stores messages).

28   [40] '461 patent, 8:50-59.

The patent explains that "the actions undertaken by the remote receiving unit during this process[] are best illustrated in … Fig. 4."[41]  Figure 4 provides a flow chart, which includes a process or command box stating "Search For Strongest Network Communication" leading to a decision diamond box with the question "Comm[unication] Channel Found?"[42]  Figure 4 is a flow chart representing the algorithm performed by the CPU 108 to search for the strongest network communicate channel and to decide whether a communication channel is present or absent.[43]  This algorithm implemented by CPU 108 thus performs the function of "detecting an absence of communication with the remote receiving unit."

"In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm."  *WMS Gaming*, 184 at 1349.  In such instances, the patentee can provide adequate structure by describing the algorithm implemented by the CPU to perform the function in any manner understandable to one of ordinary skill in the art, including via a flowchart.  *See AllVoice Computing*, 504 F.3d at 1245 (flowchart sufficient description of algorithm implemented by processor).  Here, the structure associated with the function of "detecting an absence of communication with the remote receiving unit" should be construed as "a CPU executing the decision block 'Comm. Channel Found?' in the algorithm illustrated in Figure 4," or equivalents thereto.

---

[41] *Id.*, 9:4-6.

[42] *See also* '461 patent, 9:23-29 (further describing relevant portion of Fig. 4 flow chart).

[43] *See also* '461 patent, 7:49-51 (CPU determines when satellite or terrestrial signal is received and processed).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### K.   Group 11 Terms:  source of the request; source of request

The terms "source of the request" and "source of request" were not previously construed.   This is undoubtedly because those terms are readily understandable and do not require construction.  AT&T's proposed construction uses the word "originator" instead of "source."  Since a common definition of "origin" is "source"[44] – the same word used in the claims – changing "source" to "originator" as AT&T proposes adds nothing.  These words do not need any construction.

### L.   Group 12 Terms:  Claim 12 in its entirety

AT&T initially asserted that claim 12 was indefinite.[45]  AT&T has apparently dropped that assertion, but now asserts that "[c]laim 12 does not require anything more than [c]laim 11 requires."  *See* D.I. 50, at 6.  Other than the constructions of terms discussed above, AT&T has not provided any construction of terms from claim 12, and should not be permitted to do so at this late date.

Claims 11 and 12 differ in scope on their face.  There is no requirement that the "querying at the network for location information disclosure instruction for the mobile remote receiving unit" recited in claim 11 include "transmitting the identification of the source of request to the mobile remote receiving unit and obtaining information disclosure instruction from the mobile remote receiving unit" as recited in claim 12.  Claim 11 encompasses various ways to accomplish "querying at the network for location information disclosure instruction for the mobile remote receiving unit." For example, the "querying at the network for location information disclosure instruction" could be accomplished by a control station querying various resources, including a data bank or library, for the location disclosure instruction. The data bank or library may or may not provide the required

---

[44] Nelson Decl., Ex. 12, at 228.

[45] Nelson Decl., Ex. 5 at 68.

1  location information disclosure instruction for the mobile remote receiving unit.

2  Claim 12 covers instances when the control station performs the "querying" by

3  transmitting to the mobile remote unit the identification of the source of the request,

4  and obtaining the information disclosure instruction from the mobile unit.  Thus

5  claims 11 and 12 plainly do not have the same scope.

6  Terms in claim 12 construed elsewhere should be given the same meaning.

7  No other construction has been proposed by either party and none should be given.

8  **M.  Group 13 Terms:  Claim 19 in its entirety**

9  Like it did for claim 12, AT&T initially asserted that claim 19 was

10  indefinite.[46]  AT&T now asserts that "[c]laim 19 does not require anything more

11  than [c]laim 18 requires."  *See* D.I. 50, at 7. Once again, AT&T has not provided

12  any construction of any term from claim 19 that is not already construed above, and

13  should not be permitted to do so at this late date.

14  Claim 19 recites

15  The method of claim 18 wherein the step of exposing the

16  location disclosure information (iii) may also include forwarding the

17  specified location disclosure information to a second communication

18  node at the network.

19  There is no requirement that the "exposing the location disclosure information … at

20  the network" recited in claim 18 must include "forwarding the specified location

21  disclosure information to a second communication node at the network" as recited

22  in claim 19.  For example, claim 18 covers exposing (making known) location

23  disclosure information somewhere in the network, such as control station, or a data

24  library of a control station.  Claim 19 covers communicating the location disclosure

25  information to a second node, *e.g.*, from a mobile remote unit or first control station

26

27

28

---

[46] Nelson Decl., Ex. 5, at 69.

1    to a second control station, or from a data library to a control station. Thus, claims
2    18 and 19 have different scope.

3      Aside from terms already being construed for other claims, there is only one
4    term in claim 19 – "node" – that might benefit from construction. "Node" appears
5    in asserted claims 6 and 19, and is not used in the written description of the '461
6    patent. Claim 6 recites "a mobile remote receiving unit located at a first network
7    node or geographic area … [and] a control unit located at a second network node."
8    As used in claim 6, "node" connotes a network location. This is consistent with the
9    ordinary dictionary definition of node: "In a network, the point at the end of a
10   branch."[47] *See Phillips*, 415 F.3d at 1322 ("Dictionaries … are often useful to assist
11   in understanding the commonly understood meaning of words"). Consistent with
12   its ordinary meaning and use in the claims, "node" should be construed to mean
13   "point at the end of a branch."

14     **N.**  **Group 14 Terms: (from claim 25) "the mobile remote unit able to**
15       **deny … during a period time [sic] when access to mobile remote**
16       **unit location information has been granted to another**
17       **preauthorized communication resource at the network" and (from**
18       **claim 28) "the system able to use the location access field … while**
19       **allowing another preauthorized resource identified in a second**
20       **profile to access the location information of the first**
21       **communication resource during the time that access is being**
22       **denied …"**

23     The term "while" in claim 28 was previously construed to mean "although
24   also capable of." *Nextel*, No. 2:06-CV-05306 RSWL (SHx), D.I. 261, at 7-8. It
25   should receive the same construction here. Other terms in the phrases at issue – *i.e.*
26   "mobile remote unit," "establish," "pre-authorized," "preauthorized," "resource(s),"

27      [47] Nelson Decl., Ex. 11, at 227; *see also id.* at 226 (defining network as "an
28   arrangement of nodes and interconnecting branches").

1    "profile," and "location access field" – are discussed elsewhere.  Apart from

2    "while" and those other terms, the phrases from claims 25 and 28 do not require

3    construction.

4         In *Nextel*, the Court examined claim 1 of U.S. Patent No. 5,918,159 ("the

5    '159 patent").[48]  The '461 patent is a continuation in part (C-I-P) of the '159

6    patent.[49]  Claim 1 of the '159 patent recites "divulging to certain or all callers the

7    global location of a callee in possession of the said call receiver whi[l]e blocking

8    such information from being divulged to certain or all other callers."[50] The Court

9    noted that, outside the context of the claims, "while" can connote two concepts:  (1)

10   "at the same time" or (2) "although" or "whereas."  *Nextel*, No. 2:06-CV-05306

11   RSWL (SHx), D.I. 261, at 7-8.  The Court observed that, for claim 1, "while" could

12   not mean "at the same time," as that would cause the impossibility of divulging to

13   all callers location information while at the same time blocking such information

14   from certain or all callers (or divulging location information to certain or all callers

15   while blocking such information to all callers).  *Nextel*, No. 2:06-CV-05306 RSWL

16   (SHx), D.I. 261, at 8.  Thus, the term "while" as used in claim 1 of the '159 patent

17   had to satisfy the "although" or "whereas" concepts, which the Court articulated as

18   meaning "although also capable of."  *Nextel*, No. 2:06-CV-05306 RSWL (SHx),

19   D.I. 261, at 8.

20        This rationale is equally applicable here.  "[W]hile" as used in claim 28 of

21   the '461 patent must mean "although also capable of."  See *Nextel*, No. 2:06-CV-

22   05306 RSWL (SHx), D.I. 261, at 7-8; *see also NTP*, 418 F.3d at 1293 ("Because

23   [the] patents all derive from the same parent application and share many common

---

24

25   [48] A copy of the '159 patent is provided at Ex. 14 of Nelson Decl.

26   [49] '461 patent, related U.S. Application Data on cover sheet; 1:5-9.

27   [50] The Court in *Nextel* noted that "white" was a typographical error and that
     "while" was the correct spelling of the term. *Nextel*, No. 2:06-CV-05306 RSWL
     (SHx), D.I. 261 at 7.

28

1  terms, we must interpret the claims consistently across all the patents");

2  *CardioFocus*, 827 F. Supp. 2d at 40 (similar terms used consistently to be construed

3  uniformly in both patents with common ancestry).

4      **O.**    **Group 15 Term:  authorized resource**

5         The term "authorized resource" appears in claim 1 of the '273 patent.  The

6  '273 patent was not involved in the *Nextel* case.

7         Except for the "pre," "authorized" in claim 1 of the '273 patent is the same

8  term as "preauthorized" in the '461 patent, *i.e.*, "authorized to submit a request in

9  advance of determining whether the request will be granted." Similarly, "resource"

10  in claim 1 of the '273 patent is the same term as in the '461 patent, *i.e.* "means of

11  doing something."

12         The '273 patent is a continuation of the '461 patent and both patents share

13  the same figures and written descriptions.[51]  As a result, the explanations above

14  regarding the term "pre-authorized" recited in the claims of the '461 patent apply

15  equally to "authorized" recited in claim 1 of the '273 patent.  *See NTP*, 418 F.3d at

16  1293 (common terms in patents with common ancestry should be interpreted

17  consistently); *CardioFocus*, 827 F. Supp. 2d at 40 (similar terms used consistently

18  to be construed uniformly in both patents with common ancestry).  The same is true

19  with regard to the term "resource."

20         "Authorized" should therefore be construed to mean "authorized to submit a

21  request in advance of determining whether the request will be granted."

22  "Resource" should be construed to mean "a means of doing something."

23      **P.**    **Group 16 Terms:  requesting that the location information of said**

24            **mobile remote unit be established**

25         The terms "mobile remote unit" and "established" were construed above in

26  connection with the '461 patent, and should be given the same meaning in the '273

27

28         [51] Nelson Decl, Ex. 2 (related application data on cover sheet and 1:7-14).

1  patent.  *See NTP*, 418 F.3d at 1293; *CardioFocus*, 827 F. Supp. 2d at 40.  No other

2  term in this limitation requires construction.  "Mobile remote unit" should be

3  construed to mean "a small, portable device used to send or receive communication

4  transmissions from a remote location."  Similarly, "established" should be

5  construed to mean "brought about; brought into existence."

6        **Q.**    **Group 17 Term:  time stamp**

7        The term "time stamp" in claim 1 of the '273 patent should be construed to

8  mean "recorded information indicating the time an event has occurred."

9        "Time stamp" is not used in the written description of the '273 patent.  The

10  '273 patent does, however, describe using time information to determine the

11  relative recency of location information:

12          The paging control station [6] validates the current active area of

13      the remote receiving unit with the pre-selected areas to receive pages.

14      If the current active area of the remote receiving unit is valid and

15      within a pre-defined time interval the message is transmitted to the

16      remote receiving unit. … In instances where the current active area of

17      the remote receiving unit is valid but the remote receiving unit has not

18      updated the network with its current position over a pre-defined time

19      period, … a request will be placed for the remote receiving unit to

20      update its current active global position.[52]

21  If the location information is sufficiently recent, it may be used by the system.  If

22  the location information is too old or stale, an update of the location information is

23  sought.

24        In claim 1, "time stamp" also describes the relative recency of location

25  information:

26

27      ——————————————

      [52] '273 patent, 3:41-54 (emphasis added).

28

ENOVSYS LLC'S  CLAIM CONSTRUCTION
BRIEF

1   … (e) updating said communication system with the location

2   information of said mobile remote unit;

3   wherein the determining of said step (b) further comprises:

4   (i) maintaining *a time stamp* of when the location information of

5   said mobile remote unit was last updated within said communication

6   system;

7   (ii) using said *time stamp* to verify that a predetermined time

8   interval has passed since the location information of said mobile

9   remote unit was last updated ….

10   Thus, a check is made to determine (verify) when the location information was last

11   provided or updated.  This determination could be an absolute or relative time

12   determination (*e.g.*, five minutes ago).

13   Consistent with claim 1 and the written description of the '273 patent, "time

14   stamp" should be construed as "recorded information indicating the time an event

15   occurred."

16   ### IV.   CONCLUSION

17   For the foregoing reasons, Enovsys respectfully requests that the Court adopt

18   its proposed constructions.

19

20   Dated: October 29, 2012                    Respectfully submitted,

21

22                                              SHEPPARD MULLIN RICHTER
                                                  & HAMPTON LLP

23

24   By:_____*/s/ Bruce G. Chapman*_____
                                                    Bruce G. Chapman

25                                              Attorneys for Plaintiff and
                                                Counterdefendants
26                                              ENOVSYS LLC

27

28