

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ENOVSYS LLC,

                    Plaintiff,

        v.

AT&T MOBILITY LLC, et al.,

                  Defendants.

NO. CV 11-5210 FMO (AGRx)

**ORDER RE: MOTION TO STRIKE**

Having reviewed and considered all the briefing filed with respect to defendants AT&T Mobility LLC and AT&T Mobility II LLC's (collectively "AT&T" or "defendants") Motion to Strike Previously Undisclosed Infringement Theories in Plaintiff's Expert Reports ("Motion"), the court concludes that oral argument is not necessary to resolve the Motion and orders as follows. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## **BACKGROUND**

On June 22, 2011, plaintiff Enovsys LLC ("Enovsys" or "plaintiff") filed this patent infringement suit against AT&T. (See Complaint for Patent Infringement). Enovsys asserts that AT&T infringes U.S. Patent Nos. 6,560,461 ("the '461 patent") and 7,925,273 ("the '273 patent") (collectively "patents-in-suit"). (See id. at ¶¶ 37 & 40). On November 4, 2011, AT&T filed counterclaims against Enovsys, seeking a declaration of non-infringement and invalidity. (See Defendants AT&T Mobility LLC and AT&T Mobility II LLC's Counterclaims Against Plaintiff Enovsys at ¶¶ 8-29).

The Enovsys patents-in-suit generally relate to communications systems and methods that use location based services ("LBS").  (See, e.g., '461 patent at Abstract & claims 11 & 23; '273 patent at Abstract & claim 1).  The '461 patent, entitled "Authorized Location Reporting Paging System," is directed to the selective disclosure of "location information" of a "mobile remote unit" to certain "pre-authorized" devices in a network.  (See, e.g., '461 patent at col. 9:51-10:2).  The '273 patent, entitled "Method and Apparatus for Updating the Location of a Mobile Device Within a Wireless Communication Network," is directed to a method for using certain time information to determine whether to update a communication system with the "location information" of a "mobile remote unit."  ('273 patent at col. 10:5-29).

Enovsys alleges that "[t]he AT&T Mobility Master Network . . . connected to Location Based Services" infringes the patents-in-suit.  (See Declaration of [AT&T's counsel] Jason German in Support of Defendants' Motion to Strike Previously Undisclosed Infringement Theories in Plaintiff's Expert Reports ("German Decl."), Exhibit ("Exh.") 5 ("Infringement Contentions") at 320).[1]  Enovsys asserted claims 1, 6, 11, 12, 13, 18, 19, 25, 27, and 28 of the '461 patent, and claim 1 of the '273 patent.  (See German Decl., Exh. 1, Expert Report of Christopher Rose, Ph.D. ("Rose Report") at 25).

The parties agreed to follow Rule 3-1 of the Patent Local Rules of the Northern District of California ("Patent Local Rules" or "Patent L.R.") for the disclosure of plaintiff's infringement contentions. (See Joint Stipulation Regarding Defendants' Motion to Strike Plaintiff's Infringement Contentions, filed Dec. 6, 2012, at 3, 6) ("N.D. Patent Local Rule 3-1, which the parties have been following, provides a streamlined mechanism to replace interrogatories that defendants would likely have propounded in its absence.").  AT&T filed motions to strike Enovsys's Infringement Contentions, which the court denied without prejudice.  (See Court's Order of May 30, 2013; Court's Order of Oct. 18, 2013).  In the hearing regarding the first motion, the court gave plaintiff one "last opportunity to amend" the Infringement Contentions.  (Reporter's Transcript of Claim

---

[1]   The pagination in the German exhibits refers to the page numbers in the exhibits, which were filed as Document Nos. 255 through 255-3 and as Document Nos. 239-3 through 239-6.

Construction Hearing and Defendants' Motion to Strike Plaintiff's Infringement Contentions, May 30, 2013, at 113).  During the hearing, Enovsys assured the court that while it might need to add "details[,]" that it did not plan to change its "fundamental theory[.]"  (Id. at 114).  As for possible amendment due to claim construction, Enovsys admitted that it would have to demonstrate "good faith" for a subsequent amendment.  (Id. at 114-15); see N.D. Cal. Patent L.R. 3-6 (good cause standard).  On July 12, 2013, Enovsys served Plaintiff's Revised Second Amended Disclosure of Asserted Claims and Preliminary Infringement Contentions.  (See Infringement Contentions at 324).  On September 23, 2013, the court issued a claim construction order.  (See Order re: Ex Parte Application and Claim Construction).

On October 15, 2013, Enovsys served two expert reports on infringement: the report of Christopher Rose, Ph.D., a professor in the Electrical and Computer Engineering Department at Rutgers University; and the report of Macro Gruteser, Ph.D., an  associate professor of Electrical and Computer Engineering at Rutgers.  (See Rose Report at 6 & 136; German Decl., Exh. 2, Report of Marco Gruteser at 162 & 192 ("Gruteser Report").  Enovsys also served the damages expert report of Russell Parr, CFA and President of IPRA, Inc.  (See German Decl., Exh. 3 ("Parr Report") at 233).

**LEGAL STANDARD**

Patent Local Rule 3-1 requires a party claiming patent infringement to serve infringement contentions setting forth "[e]ach claim of each patent in suit that is allegedly infringed by each opposing party[.]"  Patent L.R. 3-1(a).  The rule requires the party to identify "[s]eparately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ('Accused Instrumentality') of each opposing party of which the party [claiming infringement] is aware."  Patent L.R. 3-1(b).  The identification of Accused Instrumentalities must be "as specific as possible."  Id.  "Each product, device, and apparatus shall be identified by name or model number, if known.  Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process[.]"  Id.  The rule also requires "[a] chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality[.]"  Patent L.R.

3-1(c).[2]  In addition, Patent Local Rule 3-1(e) requires the patentholder to disclose "[w]hether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality[.]"

"The overriding principle of the Patent Local Rules is that they are designed [to] make the parties more efficient, to streamline the litigation process, and to articulate with specificity the claims and theory of a plaintiff's infringement claims." Bender v. Maxim Integrated Prods., Inc., 2010 WL 1135762,*2 (N.D. Cal. 2010) (alteration in original) (internal quotation marks omitted). Patent Local Rule 3-1 "provides a streamlined mechanism to replace the series of interrogatories that defendants would likely have propounded in its absence." Shared Memory Graphics LLC v. Apple, Inc., 812 F.Supp.2d 1022, 1024 (N.D. Cal. 2010) (internal quotation marks omitted).  "[A]ll courts agree that the degree of specificity under [Patent] Local Rule 3-1 must be sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a reasonable chance of proving infringement." Id. at 1025 (internal quotation marks omitted).  While the Patent Local Rules do not "require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement case[,] . . . a patentee must nevertheless disclose what in each accused instrumentality it contends practices each and every limitation of each asserted claim to the extent appropriate information is reasonably available to it." DCG Sys. v. Checkpoint Techs., LLC, 2012 WL 1309161, *2 (N.D. Cal. 2012) (internal quotation marks omitted).  In a patent case, "vague and conclusory contentions are inadequate." Theranos, Inc. v. Fuisz Pharma LLC, 2012 WL 6000798, *4 (N.D. Cal. 2012).

---

[2]  For claims of indirect infringement, the Infringement Contentions must include "an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement.  Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described." Patent L.R. 3-1(d); see Fujitsu Ltd. v. Belkin Int'l, Inc., 2012 WL 4497966, *8-*9 (N.D. Cal. 2012) (finding plaintiff's indirect infringement disclosure insufficient where plaintiff failed to identify specific third-party cards by manufacturer, product name, or model number); Emblaze Ltd. v. Apple Inc., 2014 WL 1089695, *2 (N.D. Cal. 2014) (patentholder was required "to identify . . . [the] direct infringement and describe the acts and roles of the induced infringers.").  "The issue here is fair notice[.]" Id. at *3.

4

1   "The [Patent Local Rules] are designed to require parties to crystallize their theories of the
2   case early in the litigation and to adhere to those theories once they have been disclosed." O2
3   Micro Int'l. Ltd. v. Monolithic Power Sys., Inc., 467 F.3d 1355, 1366 n. 12 (Fed. Cir. 2006) (internal
4   quotation marks omitted); Digital Reg of Tex., LLC v. Adobe Sys., Inc., 2014 WL 1653131, *2
5   (N.D. Cal. 2014).  However, while the Patent Local Rules are "intended to hasten resolution on
6   the merits, they are not a mechanism for resolving the merits of the parties' dispute." Nazomi
7   Commc'ns, Inc. v. Nokia Corp., 2012 WL 2906206, *2 (N.D. Cal. 2012) (internal quotation marks
8   omitted).

9       Expert reports may not introduce theories that are not set forth in the infringement
10   contentions.  Digital Reg of Tex., LLC, 2014 WL 1653131, at *2; see ASUS Computer Int'l v.
11   Round Rock Research, LLC, 2014 WL 1463609, *4 (N.D. Cal. 2014) (plaintiff must "specifically
12   include the theory" in its infringement contentions, and it may not "clarify its theory at this late
13   stage of the litigation through an expert report.").  "The scope of contentions and expert reports
14   are not, however, coextensive." Apple Inc. v. Samsung Elecs. Co., 2014 WL 173409, *1 (N.D. Cal.
15   2014) (internal quotation marks omitted).  Infringement contentions "need not disclose specific
16   evidence, whereas expert reports must include a complete statement of the expert's opinions, the
17   basis and reasons for them, and any data or other information considered when forming them."
18   Id. (first citation omitted; citing Fed. R. Civ. P. 26(a)(2)(B)).  The threshold question in deciding
19   whether to strike an expert report is whether the expert "permissibly specified the application of
20   a disclosed theory," or whether the expert "impermissibly substituted a new theory altogether[.]"
21   Id.

22                                    **DISCUSSION**

23       AT&T moves to strike portions of Enovsys's infringement and damages reports.  (See
24   Motion).  AT&T has identified six general subjects, with 20 specific theories, which the parties
25   identified as T1-T20.  (See id.; Enovsys's Opposition to ATT's Motion to Strike Portions of Expert
26   Reports ("Opp.")).  AT&T contends that Enovsys:  (1) improperly added infringement theories
27   under the doctrine of equivalents (T1) in the Rose and Gruteser infringement reports (collectively,
28   "infringement reports"); (2) improperly added theories in its infringement reports regarding the

"preauthorized" limitation (T2-T8) in the '461 patent; (3) added theories as to limitations regarding the selective blocking and allowing access to location information (T9-T14); (4) added theories regarding the "continuously tracked" limitations (T15-T18); (5) added new theories regarding claim 18 of the '461 patent (T19); and (6) added references to applications that were not listed in its Infringement Contentions (T20).  (See Motion).  The court addresses each topic in turn.

A.    Opinion Regarding Doctrine of Equivalents (T1).

AT&T asserts that Enovsys did not assert infringement under the doctrine of equivalents in its Infringement Contentions, and that the Rose and Gruteser Reports improperly rely on the doctrine of equivalents.  (See Motion at 6-7).  AT&T moves to strike portions of pages 51-52 of the Rose Report, and portions of pages 190, 196, 200, 204, and 208 of the Gruteser Report.  (See Defendants' Reply Brief in Support of Their Motion to Strike Previously Undisclosed Infringement Theories in Plaintiff's Expert Reports ("Reply"), Appendix ("App.") A at 1).

Enovsys's Infringement Contentions state as follows:

E. Nature of Infringement

Based on Enovsys' current understanding, each element or limitation of each asserted claim of each asserted patent is literally present in the AT&T Mobility Master Network connected to Location Based Services, and is used when location based services are used on the AT&T Mobility Master Network.

(Infringement Contentions at 322).  Thus, Enovsys asserts theories of literal infringement in its contentions.

However, in its infringement reports, plaintiff asserts theories under the doctrine of equivalents.  For instance, when addressing the "preauthorized" limitation for claim 6, the Rose Report provides as follows:

Furthermore, a system in which the network acquires or determines the location based on information from the phone performs the same function (tracking or monitoring the location of a phone) in a substantially similar manner (calculating location from a phone signal, rather than acquiring the

1  location from a phone signal), and achieves substantially the same result (the
2  location information of the phone is maintained within the system).  Thus,
3  even if AT&T's construction is adopted, AT&T's system satisfies this limitation
4  under the Doctrine of Equivalents.

5  (Rose Report at 51-52).

6       While addressing the "profile" term in claim 28, the Gruteser Report states that, "[t]o the
7  extent that [the] claim requires that the phone identity is stored separately in every profile, it is [Dr.
8  Gruteser's] opinion that the collection of information found on the Android, iOS, Blackberry and
9  Windows smart phones at issue here is equivalent to the one described in the claim[.]" (Gruteser
10  Report at 190).  Likewise, the Gruteser charts for claim 28 state that "[i]f the claim were construed
11  to require that the phone number be stored more than once and in the same data structure, it is
12  [Dr. Gruteser's] opinion that storing the phone number once in a separate field is equivalent, i.e.,
13  insubstantially different."  (Id. at 196, 200, 204, 208).

14       In response, Enovsys does not dispute that the Rose and Gruteser Reports rely on the
15  doctrine of equivalents.  (See Opp. at 5-7).  Rather, Enovsys asserts that the doctrine of
16  equivalents analysis "address[es] certain of AT&T's proposed constructions[,]" and that AT&T was
17  not prejudiced.  (Id. at 6).  Enovsys's assertions are unpersuasive.

18       Per the parties' agreement, Enovsys was required to comply with Patent Local Rule 3-1.
19  (See Joint Stipulation Regarding Defendants' Motion to Strike Plaintiff's Infringement Contentions,
20  filed Dec. 6, 2012 ("AT&T's First Motion to Strike" at 6) ("N.D. Patent Local Rule 3-1, which the
21  parties have been following, provides a streamlined mechanism to replace interrogatories that
22  defendants would likely have propounded in its absence.").  Patent Local Rule 3-1(e) expressly
23  required Enovsys to assert in its contentions "[w]hether each limitation of each asserted claim is
24  alleged to be literally present or present under the doctrine of equivalents in the Accused
25  Instrumentality[.]"  Patent L.R. 3-1(e).  Enovsys's Infringement Contentions fail to allege
26  infringement under the doctrine of equivalents.  (See, generally, Infringement Contentions at 322).
27  Moreover, Enovsys failed to move for leave to amend its Infringement Contentions.  See, e.g.,
28  Patent L.R. 3-6.  Thus, Enovsys's attempt to add a doctrine of equivalents analysis in its expert

1  reports is improper.  See Digital Reg of Tex., LLC, 2014 WL 1653131, at *2.  The court grants
2  defendants' motion to strike T1.

3        B.     Opinion Regarding "Preauthorized" Limitation.

4       AT&T contends that Enovsys improperly "introduce[d] several new theories" as to "how a
5  resource is allegedly 'preauthorized' in AT&T's system."  (Motion at 8).  Exemplary claim 1 recites
6  that the "communication system" comprises "a pool of signal transmitting and receiving units from
7  the network some of which are pre-authorized to be able to access the location of the mobile
8  remote unit at the network for a time[.]" ('461 patent at claim 1).  In its Infringement Contentions,
9  Enovsys identified several potential theories for the "preauthorization" process, including 1)
10  preauthorization of applications, which includes "necessary permissions," 2) the certificate or
11  permission (i.e., "ID and password") for applications to access a gateway; 3) the permissions for
12  the gateway to access a database, such as the MSISDN to access the MIND database; 4) E911
13  preauthorizations; and 5) authorizations for the SUPL server.  (See Infringement Contentions at
14  328-29; see also id. at 332, 333, 337, 339, 345, 350, & 353).

15       Enovsys served its Infringement Contentions on July 12, 2013, more than one month after
16  the claim construction hearing. (See Infringement Contentions; Court's Order of May 30, 2013).
17  On September 23, 2013, the court issued a claim construction order, which construed
18  "preauthorized" as "having a code specific to a mobile device that permits a request for that
19  device's location to be made."  (See Order Re: Ex Parte Application and Claim Construction, at
20  2).  Despite the ruling regarding the "preauthorized" limitation, Enovsys did not move to amend
21  its Infringement Contentions.  With this background in mind, the court turns to the alleged theories
22  regarding the "preauthorized" limitation.

23       **1.    Combination including app ID, PW, and MSISDN (Phone Number) (T2).**

24       AT&T asserts that the Rose Report improperly discloses an infringement theory based on
25  the combination of the app ID, PW, and the MSISDN.[3]  (See Motion at 9-10).  For instance, for
26  claim 1, the Rose Report states that "[t]he network based LBS app submits its app ID, PW and the

27  _____

28     [3]  AT&T moves to strike portions of pages 21, 36, 40, 50, 53-54, 65, 86, 88, 90, 106, and 119
of the Rose Report.  (See Reply, App. A at 1).

1  MSISDN of the device it seeks to locate which determines whether LBS app is authorized to seek

2  location of the MSISDN . . . .  The app ID, PW and MSISDN submitted by the LBS app satisfies

3  'pre-authorized,' i.e., having a code specific to a mobile device that permits a request for that

4  device's location to be made." (Rose Report at 36).  (See also id. at 40 (same combination of app

5  ID, PW, and MSISDN); 50 & 53-54 (same combination for claim 6); 65 (same combination for

6  claim 11); id. at 86, 88, & 90 (same combination for claim 18); id. at 106 (same combination for

7  claim 25); id. at 119 (same combination for claim 28).  In response, Enovsys asserts that it

8  adequately disclosed the app ID, PW, and MSISDN.  (See Opp. at 7-8).

9         While Enovsys identified the "ID and password" combination and the MSISDN in the

10  Infringement Contentions, it did not identify the combination of the three components.  Rather, the

11  Infringement Contentions provide a list of theories, including (1) the combination of the app ID and

12  PW, (2) the MSISDN, and (3) E911.  Plaintiff did not give reasonable notice as to the combination

13  of the "app ID, PW, and MSISDN," because it did not articulate this infringement theory in its

14  contentions.   See ASUS Computer Int'l, 2014 WL 1463609, at *10 (striking undisclosed

15  obviousness combinations in expert report); Samsung SDI Co. v. Matsushita Elec. Indus. Co.,

16  2006 WL 5097360, *1 (C.D. Cal. 2006) (requiring disclosure of how the accused products infringe).

17   Accordingly, the court grants-in-part the motion as to T2.  The court strikes the designated

18  sections of the Rose Report as to page 21, 40, 106, and 119; the sections of pages 36, 50, 53-54,

19  65, 86, and 88 beginning, "[t]he network based LBS app submits its app ID, PW, and the MSISDN

20  . . . .;" and the section of page 90 beginning, "[t]o be permitted to access the GW . . . ."  The court

21  denies the motion to the extent that AT&T seeks to exclude the combination of the ID and

22  password.  (See, e.g., Rose Report at 36).[4]

23         **2.    Use of SUPL server (T3).**

24         AT&T moves to strike portions of the Rose Report disclosing the theory that the SUPL

25  server is preauthorized.[5]  AT&T contends that this theory also relies on the "specific combination

---

27  [4]   The court is persuaded that plaintiff adequately disclosed this theory in its Infringement
Contentions.  (See, e.g., Infringement Contentions at 328).

28  [5]   AT&T moves to strike sections of pages 37, 51, 66, 87, and 106 of the Rose Report.  (See

1  of an application ID, password, and MSISDN." (See Motion at 11).  In response, Enovsys asserts

2  that the Infringement Contentions disclose that the SUPL Network authenticates a SUPL Agent,

3  in order to determine whether the SUPL Agent is authorized.  (See Opp. at 8).  Thus, plaintiff has

4  disclosed the authentication of a SUPL as meeting the "preauthorized" limitation.

5      Based on the present record, the court is persuaded that Enovsys adequately disclosed the

6  use of the SUPL server for preauthorization in its Infringement Contentions.  Plaintiff was not

7  required to disclose all evidence in support of its theory that the SUPL server meets the

8  "preauthorized" limitation.  See DCG Sys., 2012 WL 1309161, at *2 ("These rules do not . . .

9  require the disclosure of specific evidence nor do they require a plaintiff to prove its infringement

10  case") (internal quotation marks omitted).  Plaintiff provided sufficient detail to put defendant on

11  reasonable notice.  See Shared Memory Graphics LLC, 812 F.Supp.2d at 1025.  As for AT&T's

12  assertion that the SUPL server theory relies on the "combination of an application ID, password,

13  and MSISDN," (see Motion at 11), the cited passages in the Rose Report do not disclose the

14  combination.  Thus, the court denies the motion as to T3.

15          **3.     App permissions (T4 & T5)**.

16      AT&T moves to strike portions of the Gruteser Report regarding the admission of an

17  application into an "app market," using a "program code."[6]  (Motion at 12) (T4).  In addition, AT&T

18  moves to strike the purported theory that an application is "preauthorized" when the "user grants

19  the application the ability to access location during installation or during the application's initial

20  use."[7]  (Id. at 13) (T5).  In response, Enovsys contends that T4 and T5 are "part of a single

21  contention" regarding the installation of apps "with permissions represented by a digital code[.]"

22  (Opp. at 10) (emphasis omitted).  Indeed, plaintiff's contentions disclose that "[p]reauthorized

23  applications installed on a phone are signed by a developer with necessary permissions declared

24  _____

25  Reply, App. A at 1).

26  [6]   AT&T moves to strike portions of pages 188, 189, 205, and 207 of the Gruteser Report.
    (See Reply, App. A at 1).

27  [7]   AT&T moves to strike portions of pages 36, 105-06, and 119 of the Rose Report, and
28  portions of pages 188, 189, 191, 193, 195, 197, 199, 201, 203, 205, and 207 of the Gruteser
    Report.  (See Reply, App. A at 1).

so that they are installed on the phone in a protected domain or with permissions needed to access location information of the phones." (Infringement Contentions at 328; see also id. at 332 (claim 6); 337 (claim 11); 343 (claim 13); 345 (claim 18); 350 (claim 25); & 353 (claim 28)). Thus, in its contentions, plaintiff disclosed the theory that "preauthorized applications" obtain "permissions."

Based on the current record, the court is persuaded that plaintiff made a sufficient disclosure to put defendants on reasonable notice. See Shared Memory Graphics LLC, 812 F.Supp.2d at 1025. Plaintiff was not obligated to provide all details regarding the process, such as specifying the terms "application code" or "app market." See DCG Sys., 2012 WL 1309161, at *2. The court denies the motion as to T4 and T5.

### 4.   Switches (T6).

Defendant also moves to strike the portions of the Gruteser Report that disclose the purported theory that various "switches" preauthorize applications for claims 25, 27, and 28.[8] (See Motion at 13). AT&T argues that "Envosys's infringement contentions fail to link any switches to preauthorization." (Motion at 13). In response, plaintiff asserts that "permission switches" were generally disclosed in the Infringement Contentions. (Opp. at 10). However, plaintiff does not dispute that it failed to disclose "switches" as part of its infringement theory for "preauthorization" for claims 25, 27, and 28. (See, generally, Opp.; Infringement Contentions at 349-55).

"Expert reports may not introduce theories not set forth in the infringement contentions." Digital Reg of Tex., LLC, 2014 WL 1653131, at *2; see also ASUS Computer Int'l, 2014 WL 1463609, at *4 ("Although [the patentholder] did not need to provide detailed evidence in its infringement contentions supporting this theory of . . . infringement, it did need to specifically include the theory. It cannot clarify its theory at this late stage of the litigation through an expert report."). The generic disclosure of "permissions" is insufficient to put defendant on notice as to the "switches" theories. The court grants the motion as to the "switches."

### 5.   FamilyMap and TeleNav Preauthorization (T7).

---

[8]   AT&T moves to strike portions of pages 189, 191, 193, 195-96, 197, 199, 201, 203, 205, and 207 of the Gruteser Report. (See Reply, App. A at 1).

Defendant moves to strike sections of Dr. Gruteser's report regarding the FamilyMap and TeleNav Track applications.[9]  (See Motion at 14).  The Gruteser charts for claim 25 state that "[s]ome applications (Family Map and TeleNav Track) are preauthorized to access location of a phone by signing up and configuring the application, and providing the phone number of the phone to be accessed. . . . .  Additionally, the apps preauthorize a phone to access the location of another phone by signing up and configuring the relevant features of the apps service." (Gruteser Report at 193-94 (Android claim chart); 197 (Blackberry chart); & 205 (Windows chart); see also id. at 201-02 (similar disclosure for iOS).  AT&T asserts that the disclosure in the contentions was inadequate.  (See Motion at 14).   In response, Enovsys contends that the Infringement Contentions disclosed the "configuration of the apps[.]"  (See Opp. at 11).

Plaintiff's Infringement Contentions disclose that "[s]ome applications (Family Map and TeleNav Track) preauthorize a phone to access the location of another phone." (See Infringement Contentions at 350).  Thus, the court is persuaded that plaintiff made a sufficient disclosure to put defendants on reasonable notice regarding FamilyMap and TeleNav Track.  See Shared Memory Graphics LLC, 812 F.Supp.2d at 1025.  Plaintiff was not obligated to provide all evidence in support of its theory.  See DCG Sys., 2012 WL 1309161, at *2.  The court denies the motion as to T7.

### 6. Web Browsers as to Claim 28 (T8).

Defendant moves to strike expert references to the web browsers having a setting that can grant or deny access to location information.[10]  (See Motion at 15).  For instance, the Gruteser Report recites that "[t]he Android browser on the phone has a setting that can grant or deny all website to access location.  This setting, which is represented by digital code, is code specific to a mobile device and permits a request for that device's location to be made."  (Gruteser Report at 195) (addressing "wherein at least a profile is maintained by the system" limitation of claim 28.

---

[9]   AT&T moves to strike portions of pages 191, 193-94, 197, 201-02, and 205-06 of the Gruteser Report.  (See Reply, App. A at 2).

[10]   AT&T moves to strike portions of pages 191 and 195 of the Gruteser Report.  (See Reply, App. A at 2).

1   Defendant argues that plaintiff's contentions fail to disclose this theory.  (<u>See</u> Motion at 15).  In

2   response, plaintiff asserts that it disclosed "settings" in the Windows, Android, and Apple phones.

3   (<u>See</u> Opp. at 11).

4        The court is not persuaded by plaintiff's argument.  First, most of plaintiff's cited evidence

5   refers to other claims and limitations.  (<u>See</u> Opp. at 11).  As for claims 25-28, the Infringement

6   Contentions do not disclose an infringement theory based on the browser.  (<u>See</u>, <u>generally</u>,

7   Infringement Contentions at 349-55).  The general disclosure of "[s]ettings" is insufficient to put

8   defendant on reasonable notice regarding a specific theory based on the browser.  <u>See</u> <u>Digital</u>

9   <u>Reg of Tex.</u>, <u>LLC</u>,  2014 WL 1653131, at *2; <u>Shared Memory Graphics LLC</u>, 812 F.Supp.2d at

10  1025.  The court grants-in-part the motion as to T8, and strikes the reference on page 195 of the

11  Gruteser Report.[11]

12        C.    <u>Opinion Regarding Selective Blocking and Allowing Access.</u>

13        AT&T contends that "Enovsys's expert reports disclose several new theories regarding

14  claim elements that require blocking or allowing access to location information." (Motion at 16).

15        **1.    Use of Advice of Privacy SMS as for Claims 18 and 19 (T9).**

16        AT&T asserts that the Rose Report discloses a new theory for claims 18 and 19 regarding

17  "an Advice of Privacy SMS sent to a subscriber."[12]  (Motion at 16).    In response, plaintiff asserts

18  that it disclosed the "Advice of Privacy SMS" in the Infringement Contentions.  (<u>See</u> Opp. at 11-12)

19  (citing claim charts as to claims 12, 13, 21, 25, and 27).  However, plaintiff does not dispute that

20  it failed to disclose the "Advice of Privacy SMS" theory in its Infringement Contentions for the

21  relevant claims.  "Expert reports may not introduce theories not set forth in the infringement

22  contentions."  <u>Digital Reg of Tex., LLC</u>, 2014 WL 1653131, at *2.  <u>See also</u> <u>Emblaze Ltd.</u>, 2014

23  WL 1089695, at *3 ("The issue here is fair notice").  The court will therefore grant the motion to

24  strike as to T9.

25

26  [11]   AT&T also appears to move to strike a section of page 191 of the Gruteser Report, based
    on the same theory.  (<u>See</u> Reply, App. A at 2).  The identified section of page 191 does not
27  expressly refer to a browser, so the court denies the motion as to that page.

28  [12]   AT&T moves to strike portions of pages 92-93, 94-95, 97, and 99-100 of the Rose Report.
    (<u>See</u> Reply, App. A at 2).

## 2. Shutting off the Phone in Claim 25 (T10).

AT&T moves to strike a portion of the Rose Report asserting the theory that applications deny access to location information "by shutting off the phone[.]"[13]  (See Motion at 17).  AT&T asserts that Enovsys's contentions failed to disclose this theory.  (See id. at 16).  In response, Enovsys contends that the Infringement Contentions disclose that "[c]ertain LBS applications (TeleNav Track and Xora), permit access to the location of a phone to be allowed or denied during different periods of the day [or] to be allowed or denied to different personnel."  (Opp. at 12; Infringement Contentions at 351).  Plaintiff contends that it is immaterial "[h]ow the mobile (phone) performs the denial (e.g., via turning off[)]."  (Opp. at 12).

The court is persuaded that plaintiff failed to disclose the specific theory regarding "shutting off the phone" in the contentions for claim 25.  See Digital Reg of Tex., LLC, 2014 WL 1653131, at *2 ("Expert reports may not introduce theories not set forth in the infringement contentions."); Samsung SDI Co., 2006 WL 5097360, at *1 (requiring disclosure of how the accused products infringe).  While the contentions generally disclose the denial of access by applications, they do not disclose denial of access by "shutting off the phone."  Accordingly, the court grants-in-part the motion as to T10.  The court strikes the parenthetical on page 110 of the Rose Report, "(e.g., by shutting off the phone)."

## 3. Operating System in Claim 25 (T11).

AT&T moves to strike portions of the Gruteser Report regarding claim 25, which disclose that "[t]he phone operating system is able to deny requests for network location during a period of time when another app has been granted access to GPS location, when the user has configured location preferences accordingly."[14]  (Motion at 17; Gruteser Report at 194 & 206).  AT&T asserts that Enovsys's Infringement Contentions do not disclose the use of the operating system, and that the generic disclosure of "settings" is insufficient.  (Motion at 17).

---

[13]   AT&T moves to strike a portion of page 110 of the Rose Report.  (See Reply, App. A at 2).

[14]   AT&T moves to strike a portion of pages 191, 194 and 206 of the Gruteser Report.  (See Reply, App. A at 2).

In response, Enovsys contends that the contentions disclose that "[s]ettings in the [Android, Apple, Blackberry, Windows] phones selectively allow or deny access to location information." (Opp. at 13; Infringement Contentions at 350-51).

The court is not persuaded that Enovsys gave sufficient notice of its "operating system" theory in its Infringement Contentions.  See ASUS Computer Int'l, 2014 WL 1463609, at *3 (requiring parties to "crystallize their theories" early in the litigation) (internal quotation marks omitted).  The Infringement Contentions disclose specific instances of such purported "settings," such as "Google's location service[.]"  (See Infringement Contentions at 350-51).  However, plaintiff's contentions fail to disclose the theory that the device's "operating system" allows or denies access.  The court grants-in-part the motion as to T11, and strikes the portions of pages 194 and 206 of the Gruteser Report.[15]

### 4.   FamilyMap in Claim 25 (T12).

AT&T moves to strike portions of the Rose and Gruteser Reports that refer to the FamilyMap application.[16]  (See Motion at 18; Reply, App. A at 1).  AT&T contends that the "infringement theories Enovsys's contentions set forth for Claim 25, 27, and 28 do not mention FamilyMap at all." (Motion at 18).

In response, plaintiff contends that the contentions identify Family Map as to independent claim 25. (Opp. at 13).  Plaintiff further argues that the contentions explain the functionality of LBS applications.  Indeed, the Infringement Contentions disclose for claim 25 that "[s]ome applications (Family Map and TeleNav Track) preauthorize phone to access the location of another phone." (Infringement Contentions at 350).  Moreover, for the "mobile remote unit" limitation in claim 25, the contentions state that "[c]ertain LBS applications . . . permit access to the location of a phone to be allowed or denied during different periods of the day []o[r] to be allowed or denied to different personnel."  (Id. at 351).

---

[15]   The designated section of page 191 of the Gruteser Report does not refer to the "operating system" theory, so the court denies the motion as to this page.

[16]   AT&T moves to strike part of page 39 of the Rose Report, and part of pages 194, 198, 202 and 206 of the Gruteser Report.  (See Reply, App. A at 2).

Based on the current record, the court is persuaded that plaintiff gave reasonable notice to AT&T regarding its allegations directed to "FamilyMap."  See DCG Sys., 2012 WL 1309161, at *2 (Patent Local Rules "do not . . . require a plaintiff to prove its infringement case") (internal quotation marks omitted); Shared Memory Graphics LLC, 812 F.Supp.2d at 1025 (requiring sufficient specificity for "reasonable notice").  The court denies the motion as to T12.

### 5.      OLAM in Background Section (T13).

AT&T moves to strike a discussion of the "On Line Account Manager (OLAM)" in the Rose Report.[17]  (Motion at 18).  AT&T asserts that the OLAM is not disclosed in the Infringement Contentions.  (See id.).  In response, plaintiff asserts that the reference to OLAM is in the technology background section.  (Opp. at 14).  The court is persuaded that the OLAM section provides relevant background information, and denies the motion as to T13.

### 6.      Provisioning by the Handset in Claim 25 (T14).

AT&T moves to strike a portion of the Rose Report regarding the handset's purported "ability to adjust a setting in AT&T's MIND database."[18]  (Motion at 19).  AT&T asserts that the Infringement Contentions do not disclose a theory based on "a handset's alleged ability to perform provisioning."  (Id.).

Plaintiff responds that it expressly disclosed a "subscriber's provisioning, which can be set by the phone."  (See Opp. at 15 (emphasis omitted); Infringement Contentions at 352 (discussing claim 27)).  Enovsys also refers to its discussion of "settings" as to claim 25.  Moreover, according to Enovsys, it cited relevant AT&T documentation in its Infringement Contentions.  (See Opp. at 15).

Based on the current record, the court is not persuaded that Enovsys adequately disclosed its handset "provisioning" theory for claim 25 in the Infringement Contentions.  See Digital Reg of Tex., LLC, 2014 WL 1653131, at *2.  The bare reference to "settings" and the string citation to hundreds of pages of AT&T documents, (see Infringement Contentions at 352), is insufficient to put AT&T on reasonable notice regarding its "provisioning" theory for claim 25.  See Bender, 2010

---

[17]   AT&T moves to strike part of page 19 of the Rose Report. (See Reply, App. A at 2).

[18]   AT&T moves to strike part of page 109 of the Rose Report.  (See Reply, App. A at 3).

1  WL 1135762, at *2 ("Plaintiff cannot remedy the current inadequacy of the infringement
2  contentions merely by circling portions of a commercially available datasheet."); Theranos, 2012
3  WL 6000798, at *4 ("vague contentions and conclusory statements . . .  fall short of providing a
4  meaningful description of its theories") (internal quotation marks omitted).  The court grants the
5  motion as to T14.

6        D.    Opinion Regarding Continuous Tracking.

7        AT&T asserts that Enovsys's expert reports raise additional new theories as to how AT&T's
8  network "continuously tracks" a mobile device.  (Motion at 19).

9            1.      "Continuous tracking" (T15).

10        AT&T moves to strike parts of the Enovsys infringement reports, on the ground that they
11  include a "continuous tracking" theory that was not disclosed in the Infringement Contentions.[19]
12  (See Motion at 19-20).  In response, Enovsys asserts that the Infringement Contentions sufficiently
13  disclosed this theory because the Infringement Contentions disclose that "the AT&T network tracks
14  the locations of phones at all times" and stores data in databases.  (See Opp. at 16 (emphasis
15  omitted); Infringement Contentions at 330).

16        The court is not persuaded by plaintiff's argument that the disclosure of tracking "at all
17  times" is sufficient to put defendants on notice regarding their "continuous tracking" theory.
18  "Expert reports may not introduce theories not set forth in the infringement contentions."  Digital
19  Reg of Tex., LLC, 2014 WL 1653131, at *2; see Samsung SDI Co., 2006 WL 5097360, at *1
20  (requiring disclosure of how the accused products infringe).  The court grants the motion to strike
21  as to T15.

22            2.      Optima Database (T16).

23        AT&T moves to strike references to the "Optima database" in the Rose Report on the
24  ground that the Infringement Contentions fail to specifically identify the Optima database.[20]  (See

26      [19]   AT&T moves to strike portions of pages 42, 51, 110, and 123 of the Rose Report, and part
27  of pages 172-73 in the Gruteser Report.  (See Reply, App. A at 3).

28      [20]   AT&T moves to strike portions of pages 42, 51, 110, and 123 of the Rose Report.  (See
Reply, App. A at 3).

1   Motion at 20).  Enovsys asserts that its general discussion of "databases" was sufficient to put

2   AT&T on notice.  (Opp. at 17).  In response, AT&T asserts that the disclosure was not sufficiently

3   specific, as plaintiff identified other databases in its contentions.  (See Reply at 8).

4       While plaintiff was required to provide its infringement theory in reasonable detail, it was

5   not obligated to provide all evidentiary support.  See DCG Sys., 2012 WL 1309161, at *2 (Patent

6   Local Rules "do not . . . require the disclosure of specific evidence nor do they require a plaintiff

7   to prove its infringement case") (internal quotation marks omitted); Shared Memory Graphics LLC,

8   812 F.Supp.2d at 1025 (requiring sufficient specificity to put defendant on "reasonable notice").

9   Under the circumstances, the court is persuaded that plaintiff provided sufficient detail regarding

10  "databases" to put defendant on notice.  The court therefore denies the motion as to T16.

### 3.       Tracking by a Navigation App (T17).

12      AT&T moves to strike portions of the Rose Report regarding continuous tracking by a

13  navigation app.[21]  (See Motion at 21).  AT&T asserts that Enovsys failed to disclose such an

14  infringement theory in its contentions.  (See id.).  Enovsys responds that it disclosed in its

15  contentions that "the AT&T network tracks the location of phones at all times[,]" and that it cited

16  "AT&T's Navigator" document for claims 1 and 6.  (See Opp. at 17).

17      Based on the current record, the court is not persuaded by plaintiff's arguments.  While the

18  Infringement Contentions include allegations that the "AT&T network tracks" the phone's location,

19  it does not include the theory that an app – much less a "navigation app" – specifically tracks the

20  location.  (See Infringement Contentions at 330-32, 350-52 & 355).  In addition, plaintiff's bare

21  reference to tracking by the "AT&T network" is insufficient to put defendant on reasonable notice

22  of the theory that the navigation app performs the tracking.  See Digital Reg of Tex., LLC, 2014

23  WL 1653131, at *2.  Moreover, plaintiff's string citation to hundreds of pages of technical

24  documents, including an AT&T Navigator document, is insufficient to put defendant on reasonable

25  notice.  See Bender, 2010 WL 1135762, at *2 ("Plaintiff cannot remedy the current inadequacy of

26

27  _____

28      [21]    AT&T moves to strike portions of pages 42, 51, 110, and 123 of the Rose Report.  (See Reply, App. A at 3).

1  the infringement contentions merely by circling portions of a commercially available datasheet.").

2  The court grants the motion as to T17.

3  **4.    Periodic Reporting by Apps in Claims 25 and 28 (T18)**.

4  AT&T moves to strike portions of the infringement reports that refer to "continuous tracking"

5  being performed by "apps or system services that periodically report location information to a

6  network resource (Telenav track, certain navigation apps with real-time traffic, free apps with

7  advertisements, etc.)."[22]  (See Motion at 21).  AT&T asserts that plaintiff failed to disclose this

8  theory in its contentions.  (See id.).  In response, Enovsys contends that the additional analysis

9  was warranted, based on AT&T's claim construction position.  (See Opp. at 18).  Thus, Enovsys

10  does not contest that it failed to disclose this theory in its Infringement Contentions.

11  "Expert reports may not introduce theories not set forth in the infringement contentions."

12  See Digital Reg of Tex., LLC, 2014 WL 1653131, at *2.  Enovsys should have moved for leave to

13  amend its Infringement Contentions, if it believed that it was necessary, based on AT&T's

14  purported claim construction.  See Patent L.R. 3-6.  The court grants the motion as to T18.

15  E.    New Theories Regarding Claim 18, Element (ii) (T19).

16  AT&T moves to strike portions of the Rose Report regarding claim 18 of the '461 patent,

17  on the ground that the analysis is not supported by the Infringement Contentions.[23]  (Motion at 18).

18  In the Infringement Contentions, Enovsys asserts that the accused system satisfies element (ii)

19  of claim 18 as follows:  "[a]ny of the preauthorized applications can be selected and are selected

20  when they are used."  (Infringement Contentions at 346).  The contentions then cite AT&T

21  architecture documents, which span over 190 pages.  (See id.).  By contrast, the Rose Report

22  discusses (1) the gateway "profile for each pre-authorized network based LBS app[,]" (2) the

23  submission by an LBS app of  "its app ID, PW and the MSISDN of the device[,]" and (3) the

24  gateway's accessing the MIND database.  (Rose Report at 90).  The Rose Report then cites

25  additional AT&T evidence.  (See id.).  Enovsys asserts that the Rose Report incorporated the prior

26  ──────────

27  [22]   AT&T moves to strike portions of pages 110 and 117 of the Rose Report, and part of pages 190-91 of the Gruteser Report.  (See Reply, App. A at 3).

28  [23]   AT&T moves to strike part of page 90 of the Rose Report.  (See Reply, App. A at 3).

1  analysis of "preauthorized."  (See Opp. at 18-19).  Thus, Enovsys does not dispute that it failed

2  to disclose these theories in its Infringement Contentions.

3       In any event, the court is not persuaded by plaintiff's argument.  "Expert reports may not

4  introduce theories not set forth in the infringement contentions."  See Digital Reg of Tex., LLC,

5  2014 WL 1653131, at *2.  Plaintiff's Infringement Contentions failed to disclose the additional

6  theories in the Rose Report.  Also, the contentions did not incorporate by reference any analysis

7  of the "preauthorized" limitation disclosing the theory.  (See, generally, Infringement Contentions

8  at 346).  In short, plaintiff failed to adequately disclose the additional theory.  See ASUS Computer

9  Int'l, 2014 WL 1463609, at *4 ("Although [the patentholder] did not need to provide detailed

10  evidence in its infringement contentions supporting this theory of . . . infringement, it did need to

11  specifically include the theory.  It cannot clarify its theory at this late stage of the litigation through

12  an expert report.").  The court grants the motion to strike as to T19.

13       F.    Undisclosed Applications (T20).

14       AT&T moves to strike portions of Enovsys's damages and infringement reports that relate

15  to applications that were not expressly accused.[24]  AT&T asserts that it is inadequate to identify

16  representative examples, and that "unaccused" applications should be stricken.  (See Motion at

17  22-23).  In response, plaintiff reiterates that the "AT&T Mobility Master Network ... connected to

18  Location Based Services" is the accused system, and that it had no obligation to identify all the

19  apps.  (See Opp. at 19-20) (emphasis omitted).  It asserts that AT&T previously sought to have

20  the identification of LBS apps deleted from the contentions.  (See id.).  Enovsys further asserts

21  that "damages caused by AT&T's infringement are measured in part by the use of AT&T's network

22  by LBS apps connected to the network."  (Id. at 20).  Enovsys also argues that the damages report

23  does not disclose infringement theories.  (See id.).  As for Dr. Gruteser's report, Enovsys asserts

24  that all of the applications were properly disclosed in the Infringement Contentions.  (See id.).

25

26

---

27  [24]   AT&T moves to strike portions of pages 14-15, 39-40, 42, 51, 62, 66, 112-13, and 123 of
the Rose Report, part of pages 167, 181-184, 189, 194, 198, 202, and 206 of the Gruteser Report,

28  and part of pages 234-237 (¶¶ 82-91), 238 (¶ 24), 239 (¶ 165) and 240-11 of the Parr Report.
(See Reply, App. A at 3).

1
2
3
4
5
6
7
8
9

While plaintiff is required to disclose its infringement theories in its Infringement Contentions, it is not obligated to disclose all "specific evidence" in the contentions.  See Apple Inc., 2014 WL 173409, at *1.  Rather, a party's expert report is required to include all facts upon which the expert relies.  See id. ("expert reports must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them.").  Accordingly, plaintiff's experts appropriately cited additional facts, including other apps that were not expressly identified in the Infringement Contentions.  As for Enovsys's damages model, defendant has not identified controlling legal authority requiring such a limited range of materials for the damages phase.  The court denies the motion as to T20.

10

## **CONCLUSION**

11
12

1. Based on the foregoing, IT IS ORDERED THAT AT&T's Motion to Strike **(Document No. 239)** is **granted-in-part**.

13

2. The Motion is **granted** as to:  T1; T6; T9; T14; T15; T17; T18; and T19.

14

3. The Motion is **denied** as to:  T3; T4; T5; T7; T12; T13; T16 and T20.

15

4. The Motion is **granted-in-part** as to T2, T8, T10, and T11.

16

Dated this 4th day of November, 2014.

17

                                                                    /s/

18

                                    Fernando M. Olguin
                                    United States District Judge

19
20
21
22
23
24
25
26
27
28