**BAKER BOTTS L.L.P.**
Bryant C. Boren, Jr. (SBN 260602)
bryant.c.boren@bakerbotts.com
Eliot D. Williams (SBN 290780)
eliot.williams@bakerbotts.com
Gina A. Bibby (SBN 242657)
gina.bibby@bakerbotts.com
Jason R. German (SBN 280837)
jason.german@bakerbotts.com
1001 Page Mill Road, Building One, Palo Alto, CA 94304
Telephone: 650.739.7500; Facsimile:  650.739.7699

Timothy S. Durst (*pro hac vice*)
tim.durst@bakerbotts.com
Russell J. Crain (*pro hac vice*)
russ.crain@bakerbotts.com
Brian D. Johnston (*pro hac vice*)
brian.johnston@bakerbotts.com
2001 Ross Avenue, Dallas, TX  75201
Telephone: 214.953.6500; Facsimile:  214.953.6503

Michael Hawes (*pro hac vice*)
michael.hawes@bakerbotts.com
910 Louisiana Street, Houston, TX 77002
Telephone: 713.229.1234; Facsimile:  713.229.1522

*Attorneys for Defendants and Counterclaimants*
*AT&T MOBILITY LLC and AT&T MOBILITY II LLC*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ENOVSYS LLC, <br><br> Plaintiff, <br><br> vs. <br><br> AT&T MOBILITY LLC and AT&T MOBILITY II LLC, <br><br> Defendants. | Case No.: 2:11-CV-05210-SS <br><br> **AT&T'S MOTION TO REDACT TRIAL TRANSCRIPTS** |
| AT&T MOBILITY LLC and AT&T MOBILITY II LLC, <br><br> Counterclaimants, <br><br> vs. <br><br> ENOVSYS LLC, <br><br> Counterdefendant. | Honorable Mag. Judge Suzanne H. Segal |

## I. Introduction

Pursuant to this Court's Order re: Applications to File Under Seal (D.I. 394), Defendants AT&T Mobility LLC and AT&T Mobility II LLC (collectively "AT&T") respectfully request the Court to file under seal AT&T's confidential information contained in the trial transcripts filed at D.I. 681, 823, 683, 685, and 686. The specific portions of those transcripts that AT&T seeks to redact are identified in Exhibit A to this motion and in Defendants' Redaction Requests filed at D.I. 692-696.

Under Civil Local Rule 79-5, a party can request that court records be filed under seal by submitting a written application along with the documents that the party seeks to file under seal. Court records should be sealed when compelling reasons for doing so are supported by specific factual findings. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2006). In the Ninth Circuit, "[i]n general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such court files might have become a vehicle for improper purposes, such as the use of records to . . . release trade secrets" (internal quotation marks and citations omitted). *Id. See also Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) (Noting that "courts have refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing."). The Ninth Circuit defines trade secrets as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *See, e.g., Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972).

AT&T seeks to seal only that limited information held as trade secrets by AT&T, the disclosure of which will jeopardize the security of its network, potentially exposing customers' personal data to attack. *See* Sec. II, *infra*. Thus,

AT&T respectfully requests this Court to redact the trial transcripts addressed by this motion.

## II. Compelling Reasons Exist to Redact the Transcripts

D.I. 692-696 identify the specific page and line numbers of the transcripts that AT&T seeks to redact. Exhibit A to this motion groups the transcript portions by subject matter and identifies the specific subject matter that compels sealing each group. For each group, the specific factual findings set forth in Exhibit A and the subsections below provide compelling reasons for protecting AT&T's confidential information from public disclosure.

### A. The Information in Group 1 Is Confidential

Group 1 consists of statements that provide detailed descriptions of AT&T's propriety approach to securing, validating, and processing location requests, including detailed descriptions about: AT&T's location platform components, the identity of the vendors and model names of components used in that location platform, and how AT&T's system stores users' confidential location information, including an identification of specific components that do (or do not) route, analyze, and/or maintain location. Exhibit A describes in further detail the specific technical information disclosed by the statements in Group 1. The statements in Group 1 disclose the contents of AT&T's confidential documents that contain trade secrets and proprietary information held by AT&T. D.I. 659-2 (Davis Decl.) ¶¶ 4-6. Making that information publically available could provide information which hackers could use to develop potential attacks on AT&T's network location platform, which could compromise the security of AT&T customers' personal information, potentially exposing their precise whereabouts to unauthorized individuals. *Id.* at ¶ 7.

AT&T implements extensive security measures to ensure that the trade secrets corresponding to Group 1 remain confidential. For example, AT&T designates documents containing trade secrets as "confidential," "proprietary,"

1  "not for dissemination," and the like.  AT&T restricts access to information about
2  its trade secret outside of AT&T by: 1) preventing dissemination of documents
3  containing trade secret information to unauthorized third parties; and 2) permitting
4  dissemination of documents containing trade secret information to a third party
5  only when the third party consents to a binding non-disclosure agreement
6  regarding the trade secrets.  In addition, AT&T restricts access within the company
7  to trade secret information to only those individuals that are authorized, as a result
8  of their role within the company, to learn such trade secrets.  *Id*. at ¶ 8.

9        Moreover, AT&T and its customers face significant harm if the confidential
10 information AT&T seeks to protect in Group 1 is disclosed.  Public release of the
11 confidential information disclosed by statements in Group 1 is likely to cause
12 competitive injury to AT&T by informing its competitors of AT&T's propriety
13 network architecture.  *Id*. at ¶ 9.  In addition, public release of that information
14 could compromise the security of AT&T's network, potentially exposing
15 customer sensitive information to unauthorized individuals.  *Id.*

16       **B.  The Information in Group 2 Is Confidential**

17       The statements in Group 2 disclose the contents of documents that describe
18 information held as a trade secrets by AT&T on behalf of its the third-party
19 business partners and that were provided to AT&T under non-disclosure
20 agreements.  D.I. 659-2 (Davis Decl.) ¶ 11.

21       AT&T implements extensive security measures to ensure that trade secret
22 information held by third-party business partners, including the information
23 corresponding to Group 2, remains confidential.  For example, AT&T designates
24 documents containing trade secrets as "confidential," "proprietary," "not for
25 dissemination," and the like.  AT&T restricts access to information about its trade
26 secret outside of AT&T by: 1) preventing dissemination of documents containing
27 trade secret information to unauthorized third parties; and 2) permitting
28 dissemination of documents containing trade secret information to a third party

1  only when the third party consents to a binding non-disclosure agreement
2  regarding the trade secrets. In addition, AT&T restricts access within the company
3  to trade secret information to only those individuals that are authorized, as a result
4  of their role within the company, to learn such trade secrets. *Id*. at ¶ 12.

5  Moreover, public disclosure of this confidential information is likely to
6  cause competitive injury to AT&T, its customers, and its business partners by
7  informing competitors of the partner's proprietary technology and of specific,
8  confidential aspects of AT&T and the partner's relationship. *Id. at* ¶ 13. In
9  addition, release of that information could jeopardize the security of AT&T's
10 network and of the business partner's technology. *Id.* Furthermore, making this
11 information publically available could provide information from which hackers
12 could potentially attack AT&T and its business partners' technology platform,
13 which could compromise the security of AT&T customers' personal information,
14 including their precise whereabouts, and expose this confidential customer
15 information to unauthorized individuals. *Id*.

### C. The Information in Group 3 Is Confidential

17 Group 3 consists of statements that provide detailed descriptions of the
18 structure, composition, and function of AT&T's network, including detailed
19 descriptions of how AT&T configures specific parameters in its servers; these
20 parameters are competitively sensitive information and trade secrets. Exhibit A
21 describes in further detail the specific technical information disclosed by the
22 documents in Group 3. The statements in Group 3 disclose the contents of
23 documents that described information held as trade secrets by AT&T. D.I. 659-2
24 (Davis Decl.) ¶ 15.

25 AT&T implements extensive security measures to ensure that the trade
26 secrets corresponding to Group 3 remain confidential. For example, AT&T
27 designates documents containing trade secrets as "confidential," "proprietary,"
28 "not for dissemination," and the like. AT&T restricts access to information about

its trade secret outside of AT&T by: 1) preventing dissemination of documents containing trade secret information to unauthorized third parties; and 2) permitting dissemination of documents containing trade secret information to a third party only when the third party consents to a binding non-disclosure agreement regarding the trade secrets. In addition, AT&T restricts access within the company to trade secret information to only those individuals that are authorized, as a result of their role within the company, to learn such trade secrets. *Id*. at ¶ 16

Moreover, AT&T and its customers face significant harm if the confidential information AT&T seeks to protect in Group 3 is disclosed. Public release of the confidential information disclosed by documents in Group 3 is likely to cause competitive injury to AT&T by informing its competitors of AT&T's propriety network architecture. *Id*. at ¶ 17. In addition, public release of that information could compromise the security of AT&T's network by revealing sensitive information about its propriety network architecture, making the systems easier to hack and private information of users more susceptible to interception. *Id*. Furthermore, making this information publically available could provide information from which hackers could potentially attack AT&T's network location platform, which could compromise the security of AT&T customers' personal information, including their precise whereabouts, and expose this confidential customer information to unauthorized individuals. *Id*.

### III. Conclusion

For the reasons set forth above, AT&T respectfully requests this Court to redact the trial transcripts as identified in Defendants' Redaction Requests filed at D.I. 692-696.

Dated: September 30, 2015            Respectfully submitted,
                                     BAKER BOTTS L.L.P.

                                     */s/ Eliot D. Williams*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Eliot D. Williams

Attorney for Defendants and Counterclaimants
AT&T MOBILITY LLC and AT&T MOBILITY II LLC